USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/23/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ROBERTO CASTRO,

                     Plaintiff,

       -v-

THE CITY OF NEW YORK,

                     Defendant.

---------------------------------------------------------------X

09 Civ. 3754 (PAE)

OPINION AND ORDER

PAUL A. ENGELMAYER, District Judge:

Trial in this case is scheduled to commence on April 9, 2012. This Opinion and Order addresses the parties' various motions *in limine*.

**I.    Background**

The background to this case is summarized in the memorandum decision on summary judgment issued on August 25, 2011 ("Summ. J. Op."), by the Hon. William H. Pauley, to whom this case was then assigned. Familiarity with that decision is assumed.

In brief, plaintiff Roberto Castro was employed as a cleaner at P.S. 173 between 1999 and 2006. Castro brought claims against defendant New York City, the Department of Education, a supervisor, and co-worker, alleging, *inter alia*, discrimination on the basis of his age (51, as of when Castro left his job in 2006) and national origin (he is from the Dominican Republic). The Court granted summary judgment for the defense on all claims, save two: Castro's claims against the City under (1) Title VII, 42 U.S.C. § 2000e *et seq.* and (2) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Significant to this

1

Opinion, the claims dismissed included those based on a hostile work environment, constructive discharge, and retaliation.

## II. Motions *In Limine*

### A. The Remaining Claims

The Court first addresses two motions – one by each party – relating to the scope of the claims remaining to be resolved at trial.

#### 1. The City's motion to dismiss Castro's ADEA claim

The City moves for dismissal of Castro's ADEA claim. Notwithstanding the fact that the Court's August 25, 2011 Order left that claim standing, the City argues that the Court's rulings limiting the adverse employment actions that Castro can assert at trial preclude, as a matter of law, relief under the ADEA. The Court held that Castro may assert only that he was "asked to perform tasks outside his normal duties" and that "he was assigned disproportionately more . . . tasks than his coworkers." Summ. J. Op. 9. In dismissing the constructive discharge claim, the Court specifically found that Castro's allegations "amount to no more than a difficult and unpleasant work environment, and are insufficient to establish a constructive discharge." *Id.* at 10. The City argues that, with the dismissal of Castro's constructive discharge claim, he can no longer claim any economic damages, and thus his claim under the ADEA is not cognizable.

The Court agrees. Under the ADEA, "[t]he only remedies available are make-whole remedies such as back pay, front pay and reinstatement." *Hatter v. New York City Hous. Auth.*, No. 97-9351-cv, 1998 U.S. App. LEXIS 27571, at *3 (2d Cir. Oct. 22, 1998) (upholding dismissal of ADEA claim where plaintiff was "fully compensated" during period of employment, where there was a non-discriminatory basis for termination, and where there was no viable claim that that discrimination prevented her from returning to work), *cert. denied*, 528

2

U.S. 936 (1999); *see also Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995) (noting that the Courts of Appeals have "unanimously held . . . that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress"); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011) (ADEA permits "reinstatement, back pay, and other legal or equitable relief as may be appropriate . . . but not compensatory damages for pain and suffering or emotional distress") (citations and internal quotation marks omitted); *Bernstein v. Aetna Life & Cas.*, 843 F.2d 359, 365 (9th Cir. 1988) ("remedies under the ADEA are strictly limited, and . . . punitive and emotional distress damages are unavailable"); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147-48 (2d Cir. 1984) (no recovery for emotional distress and punitive damages under ADEA); *Boise v. New York Univ.*, No. 00-cv-7844, 2003 U.S. Dist. LEXIS 18639, at *6-7 (S.D.N.Y. Oct. 21, 2003) (granting summary judgment for defendant where plaintiff's ADEA claims were not for back pay, front pay, or reinstatement, but for punitive damages, which statute does not authorize), *aff'd*, 121 F. App'x 890, 892 (2d Cir. 2005).

In light of the narrowing of Castro's claims – and in particular, the dismissal of his constructive discharge claim – his ADEA claim is no longer viable. The ADEA claim is, therefore, dismissed.

### 2. Castro's motion with respect to a hostile work environment claim

Castro appears to argue that Judge Pauley overlooked his claim that he had been physically assaulted by his supervisor, David Rodriguez, on May 9, 2006. Castro suggests that this episode, if considered, would (alone or in combination with other evidence) suffice to support a hostile work environment claim. Pl.'s Mem. in Supp. of Pre-Trial Mots. 2-3. The

Court construes this argument as a motion either for clarification or reconsideration of Judge Pauley's ruling with respect to that claim.

Upon review of the record, the Court does not agree with Castro that Judge Pauley overlooked the May 9, 2006 episode in granting summary judgment on the hostile work environment claim to the defense. That episode featured prominently in Castro's brief opposing summary judgment, which included a section headlined "Physical Assault," and which referenced the "physical injury" and "threats" to which Rodriguez allegedly subjected Castro. Def.'s Mem. in Opp'n to Pl.'s Pre-Trial Mots. 9, 6-7 (quoting Pl.'s Summ. J. Resp. & Opp'n 7-8, 4). And Judge Pauley, in turn, pointedly referred in his decision to the May 9, 2006 episode, as testified to by Castro. Judge Pauley noted:

> The most significant confrontation between Castro and Rodriguez occurred on May 9, 2006. Rodriguez allegedly clenched his fists, put his face close to Castro's, called him a "fucking Dominican" and an "old man" and told him to clean the lights or he would be fired.

Summ. J. Op. 4; *see also id.* at 7 (noting, in assessing whether Castro had suffered an adverse employment action, that Castro had alleged, *inter alia*, "physical injury"). Judge Pauley also cited to the portion of Castro's deposition referencing this incident. Summ. J. Op. 4 (citing March 31, 2008 Castro Dep. 25 & July 27, 2008 Castro Dep. 70-72). The Court thus rejects Castro's argument that the May 9, 2006 incident was overlooked in Judge Pauley's decision granting summary judgment.

In any event, even considering the issue afresh, the Court is persuaded that the facts as alleged by Castro do not rise to the level of a hostile work environment. As Judge Pauley recognized, "Title VII 'does not set forth a general civility code for the American workplace,'" Summ. J. Op. 13 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)), and a hostile work environment must be considered in light of the totality of the circumstances,

4

"'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" Summ. J. Op. 13 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)). Importantly, as Judge Pauley noted, "'[g]enerally, unless an incident of harassment is sufficiently severe, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Summ. J. Op. 13 (quoting *Gorzynski*, 596 F.3d at 102).

Here, Castro has alleged a single episode involving a physical threat to, or intimidation of, himself. That episode is not sufficiently severe on its face to support a hostile work environment claim. Castro testified that, on May 9, 2006, Rodriguez "got close to my face and pushed me with his face and he asked me to hit him" and that "an hour later after cleaning the light fixtures, I had a very strong chest pain." Def.'s Mem. in Opp'n to Pl.'s Pre-Trial Mots. 7, n.2 (quoting March 31, 2008 Castro Dep. 70-72). When asked if Rodriguez had ever touched him, Castro testified only, "My face with his nose." *Id.* Castro, tellingly, declined ever being touched by Rodriguez in any other way. *Id.* This incident, although potentially probative of discriminatory intent – given Rodriguez's allegedly having called Castro a "fucking Dominican" in the midst of it – does not support a cognizable hostile environment claim, whether viewed alone or in combination with the other evidence of Rodriguez's hostility to him that Castro marshals. *See Idrees v. City of New York*, 388 F. App'x 62, 64 (2d Cir. 2010) (summ. order) (in order to reach the level of a hostile work environment, workplace must be "permeated with discriminatory intimidation to an extent that alter[ed] the conditions of employment") (citation and internal quotation marks omitted); *Alfano v. Costello*, 294 F.3d 365, 376-77 (2d Cir. 2002) (eight to twelve alleged incidents insufficient to meet threshold for hostile work environment);

5

*DelaPaz v. New York City Police Dep't*, No. 01-cv-5416, 2003 U.S. Dist. LEXIS 13810, at *8 (S.D.N.Y. Aug. 6, 2003) ("the Second Circuit erected a remarkably high hurdle with respect to the level and frequency of offensive conduct that must be present in order to sustain [a hostile work environment] claim"). The Court, therefore, reaffirms the dismissal of Castro's hostile work environment claim.

### B. Modification of Case Caption

The City moves, on the basis of Judge Pauley's decision, to amend the caption of this case to delete its former co-defendants. Castro assents to this relief. This motion is granted (as is reflected in the caption to this Opinion and Order).

### C. Exclusion of Evidence

The City next moves to preclude all testimony and documentary evidence concerning the dismissed claims. Although merited as to some evidence, the City's request sweeps too broadly, because some of this evidence is also relevant to plaintiff's remaining Title VII claim. Instead, a more particularized inquiry is needed as to specific categories or items of evidence.

The Court's rulings as to admissibility are as follows:

**1. The May 9, 2006 incident:** The Court will permit Castro to testify as to the May 9, 2006, incident between himself and his supervisor, Rodriguez. Because of Rodriguez's express reference during that angry encounter to Castro's Dominican heritage, the May 9, 2006 incident is probative of whether the City, personified by Rodriguez, harbored discriminatory intent and motive as to the adverse employment actions that remain within the scope of the case. However, to minimize the risk of unfair prejudice and confusion, the Court will give an appropriate instruction to the jury as to the limited, discrete purpose for which this incident is being admitted. Because this episode is admissible for the limited purpose of establishing discriminatory intent

and motive, the Court will also preclude any evidence as to the alleged emotional impact of this incident on Castro. Relatedly, in light of the dismissal of Castro's constructive discharge claim, the Court will preclude any argument, or testimony, to the effect that Castro was required to abandon his job (in whole or in part) as a result of the May 9, 2006 incident.

**2. Post-employment medical/psychological condition:** The Court will preclude any evidence as to Castro's post-employment medical or psychological condition. Such evidence would be relevant to damages under Title VII only to the extent that it reliably reflected on injuries traceable to the adverse employment actions that remain within the scope of this case. Under Judge Pauley's ruling, those actions are limited to the alleged disproportionate assignment of work to Castro and the assignment to Castro of work outside his normal duties. On the record as presented, the Court is unpersuaded that the evidence as to Castro's post-employment medical or psychological condition is reliably traceable to those discrete acts of alleged discrimination, as opposed to the fact of Castro's cessation of work or his preexisting depression. Castro is welcome to bring to the Court's attention, prior to trial, concrete evidence in the existing discovery record that reflects post-termination medical or psychological injuries that are fairly traceable to the discrete acts of alleged discrimination that remain in this case. If such evidence is presented, the Court will reconsider this ruling.

**3. Constructive discharge:** In light of Judge Pauley's dismissal of the constructive discharge claim, the Court will preclude any testimony or evidence alleging or insinuating that Castro was forced to leave his job. The Court will also preclude any evidence of economic damage arising from the cessation of Castro's employment.

**4. Plaintiff's witnesses:** The City moves *in limine* to preclude altogether the testimony of six of plaintiff's witnesses. The Court will exclude three of these witnesses – Cassie Castillo,

7

"Ms. Linda," and Dr. Santos Veles – based on the City's representation (which Castro does not appear to dispute) that none of these witnesses were identified in plaintiff's initial disclosures, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), or in response to defendants' interrogatories. Dr. Veles is also excluded on the ground that Castro now proposes to call him as an expert medical witness, but did not identify him as a treatment provider or otherwise comply with Fed. R. Civ. P. 26(a)(2). In the event that defendants' representations are incorrect and that any of these three witnesses were in fact properly identified in compliance with the Federal Rules of Civil Procedure, Castro is authorized to submit documentary proof of this, and the Court will reconsider this ruling.

The City has also indicated that it objects to, and seeks to exclude, unspecified aspects of the testimony of witnesses Lupe Rodriguez, Lydia Rivera, Ramon Castro, Miguel Ramos, and Rosa Castro. As to the first four witnesses, the City does not specify what portions of their anticipated testimony are problematic. The Court therefore denies this motion, while noting that all witnesses are bound by the substantive limitations on testimony set forth elsewhere in this Opinion and Order. As to Rosa Castro, the City states that her testimony is "completely based on hearsay," not on personal knowledge. Plaintiff Castro does not address this motion in his brief. The Court will, therefore, exclude Rosa Castro's testimony, without prejudice to plaintiff's right to offer her testimony at a later time, upon a satisfactory demonstration to the Court, prior to trial, that her testimony is admissible under the Federal Rules of Evidence.

**5. Plaintiff's exhibits:** The City moves *in limine* to exclude Castro's trial exhibits 1 through 7. Neither party, however, furnished the Court with a copy of these exhibits. The Court will not rule on a motion to exclude documentary evidence without reviewing the exhibits at issue. The City's motion to exclude these exhibits is, therefore, denied, without prejudice to the

City's right to renew the motion, this time attaching the exhibits. If the City wishes to make such a renewed motion, the Court directs it to do so within one week of this Order.

**6. Defendant's witnesses:** Castro moves to exclude the testimony of defense witnesses Gilberto DeJesus and Jason Rosario. According to the parties' joint pretrial order, both of these witnesses are of Dominican descent and were supervised by Rodriguez, the supervisor whom plaintiff has claimed discriminated against him on the basis of his Dominican descent. The defense represents that these witnesses will testify about their observations and experiences working for Rodriguez, which, the defense argues, is relevant to Castro's claim of discrimination on the basis of Dominican national origin. Castro argues that DeJesus and Rosario were employed "as pretext." This unsupported declaration, however, does not supply a basis to exclude their testimony.

Castro also argues that the two men's testimony should be excluded because neither DeJesus nor Rosario "were employed during the time pertinent to the case." Notably, the City does not dispute this factual representation. This objection gives the Court pause. However, neither party has represented to the Court when DeJesus or Rosario were supervised by Rodriguez, let alone the nature of their jobs and the circumstances under which this supervision occurred. The Court is thus unable to judge whether the circumstances of their supervision by Rodriguez are similar enough to fairly bear upon the issue of discriminatory intent in this case, which is whether Rodriguez assigned more work to Castro, or work outside of his normal duties, on account of his national origin. As a result of this deficient showing, the Court is unable to make a judgment whether the testimony of DeJesus or Rosario satisfies the standards of Fed. R. Evid. 401-403. The Court will therefore grant this motion *in limine*, without prejudice to the City's right to move *in limine* for permission to offer this testimony based on a detailed factual

proffer as to the relevant circumstances of DeJesus and Rosario's employment. If the City wishes to make such a motion *in limine*, the Court directs it to do so within one week of this Order; any response by Castro is due within three days of such a motion.

**7. Defendant's exhibits:** Castro seeks to preclude defense exhibits A, I, J, L, N, Q, T, V, W, X, and Y, on the grounds that they are irrelevant, hearsay, and, in some instances, undated. Having reviewed these exhibits, the Court denies the motion. First, on their faces, these records appear to be both relevant and business records, and hence admissible pursuant to Fed. R. Evid. 803(6), subject to a proper foundation being established at trial. Second, nine of the 11 exhibits are either signed by Castro or bear the name of defense witness Tom Mitchell, who supervised Rodriguez, and hence are capable of being authenticated at trial and connected to circumstances relevant to this case. Third, to the extent a number of these exhibits reflect or appear to reflect adverse work evaluations of Castro (*e.g.*, Exs. I, T, W, X, and Y), it is conceivable that these exhibits will be admissible at trial. For these reasons, the Court denies Castro's motion *in limine* to exclude these exhibits. The burden remains on the City, however, to properly authenticate these exhibits at trial and to demonstrate that their admission is otherwise consistent with the Federal Rules of Evidence.

## CONCLUSION

For the foregoing reasons, the Court holds that: (1) the City's motion to dismiss Castro's ADEA claim is GRANTED; (2) Castro's motion to reconsider the dismissal of his hostile work environment claim is DENIED; (3) the City's motion to amend the case caption to strike all defendants other than the City is GRANTED; (4) the City's motion to exclude evidence of the May 9, 2006 incident involving Castro and Rodriguez is DENIED; (5) the City's motion to exclude evidence of Castro's post-employment medical and psychological condition is GRANTED; (6) the City's motion to exclude evidence or claims of Castro's alleged constructive discharge, and the related motion to preclude any evidence of economic damage arising from the cessation of Castro's employment is GRANTED; (7) the City's motion to preclude the testimony of Cassie Castillo, "Ms. Linda," Dr. Santos Veles, and Rosa Castro is GRANTED, but its motion to preclude the testimony of other defense witnesses is DENIED; (8) the City's motion to exclude Castro's trial exhibits 1 through 7 is DENIED, but solely because those exhibits have not been made available to the Court; (9) Castro's motion to exclude defense witnesses Gilberto DeJesus and Jason Rosario is GRANTED; and (10) Castro's motion to preclude defense exhibits A, I, J, L, N, Q, T, V, W, X, and Y is DENIED.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 23, 2012
New York, New York